# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARIA PUSCAS,

    Plaintiff,

Case No.

v.

HON.

THE DEPARTMENT OF VETERANS
AFFAIRS and SECRETARY OF VETRERANS
AFFAIRS ROBERT WILKIE,

    Defendants.

---

SCOTT P. BATEY (P54711)
Batey Law Firm, PLLC
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Maria Puscas (hereinafter "Plaintiff"), by and through her attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendants states as follows:

    1.    Plaintiff, Maria Puscas, is a resident of the City of Livonia, County of Wayne and State of Michigan.

2. Defendant, Department of Veterans Affairs, is a United States governmental department.

3. Defendant, Robert Wilkie ("Wilkie"), is the Secretary of Veterans Affairs.

4. The events producing the original injury occurred in the County of Wayne in the Eastern District, Southern Division of Michigan.

5. Plaintiff brings this action for damages stemming from the acts and/or omissions of Defendants age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, retaliation, hostile work environment and adverse employment actions which resulted in emotional and economic damages to Plaintiff.

6. The amount in controversy exceeds $100,000.00, exclusive of interest and costs, and jurisdiction and venue are otherwise proper in the United States District Court, Eastern District of Michigan, Southern Division.

**GENERAL ALLEGATIONS**

7. Plaintiff incorporates by reference paragraphs 1 through 6 of the Complaint as though fully set forth herein.

8. Plaintiff is a fifty-three (53) year old female who was hired by Defendant, Department of Veterans Affairs as a Cardiology Clinic Coordinator at

the John D. Dingell VA Medical Center in Detroit, Michigan, in 2008, after previously working for Defendant, Department of Veterans Affairs in Ann Arbor between 2002 and 2006.

9. Plaintiff was an exemplary employee who helped provide excellent care for veterans for over a decade.

10. Plaintiff was treated differently than other nurses on numerous occasions because of her age.

11. Plaintiff functioned in the role of and performed the duties of a registered nurse throughout her employment with Defendant, Department of Veterans Affairs.

12. In 2010, Plaintiff spoke with Dr. John Ebright ("Dr. Ebright"), who was then Associate Chief of Staff and Plaintiff's supervisor, about adjusting her schedule to allow her to fulfill the practicum requirements for a nurse practitioner program she was then completing.

13. Plaintiff asked permission to work 4 shifts per week of 10 hours to allow for her to meet the required hours working as a nurse practitioner at a local urgent care clinic.

14. Dr. Ebright denied Plaintiff's request and questioned, "who did you ask before you decided to go to Nurse Practitioner school", causing Plaintiff to

3

sense that Dr. Ebright clearly disapproved of her seeking further education at her age and was annoyed that she would ask for a schedule adjustment to complete it.

15. Plaintiff offered to be flexible with the schedule adjustment, but Dr. Ebright persisted in refusing to allow any accommodation despite allowing many other similarly situated youngertnurses working for Defendant, Department of Veterans Affairs were allowed to adjust their schedule based on their needs, including through working 9 hours shifts, 12 hour shifts, or telework. Plaintiff was denied these accommodations.

16. Plaintiff was forced to ask for assistance from her union, which caused a significant confrontation between Dr. Ebright and the union as Dr. Ebright did not like working with the union.

17. Eventually, Dr. Ebright permitted Plaintiff to work 4 shifts of 10 hours following significant union pressure.

18. Plaintiff graduated from nurse practitioner school in 2011 at the age of 43.

19. In February 2015, Defendant, Department of Veterans Affairs hired Dr. Patricia Brown ("Dr. Brown") as Dr. Ebright's successor.

20. Upon information and belief, Dr. Ebright and Dr. Brown were friends and based upon her conversations with Dr. Brown, Dr. Ebright negatively

4

portrayed Plaintiff to Dr. Brown due to her age and complaints of age discrimination and biased Dr. Brown against Plaintiff.

21. As a result of Dr. Ebright's negatively portraying Plaintiff to Dr. Brown due to her age and complaints of age discrimination, Dr. Brown continued to retaliate and discriminate against Plaintiff due to her age.

22. Between 2011 and 2016, Plaintiff applied for every open nurse practitioner position that she was aware of with Defendant, Department of Veterans Affairs' Detroit medical center which totaled at least 30 applications.

23. Plaintiff was only given a call back about 2 of these positions and was not selected for any of them.

24. Plaintiff was more than qualified for all of these nurse practitioner positions as she had gained a nurse practitioner license and she has been nurse since she was 21.

25. Plaintiff made it clear to Dr. Brown that she was qualified for a position as a nurse practitioner and wanted to serve in as one for Defendant, Department of Veterans Affairs.

26. The Cardiology Department for Defendant, Department of Veterans Affairs hired 4 nurse practitioners after Plaintiff gained her nurse practitioner license and Defendant, Department of Veterans Affairs knew she wanted to serve

as one. Upon information and belief, all 4 of these positions went to nurses younger than Plaintiff.

27. Plaintiff applied for a nurse practitioner position in the cardiology department that opened in 2015.

28. Plaintiff was interviewed by an 8-person panel and made an excellent impression.

29. Upon information and belief, Plaintiff gained the recommendation of the panel and was the only person to apply. However, Dr. Brown had final authority on filling the position and chose to leave it unfilled rather than hire Plaintiff.

30. While Defendant, Department of Veterans Affairs normally responded to job applicants within 7-10 business days, Plaintiff never heard back until Plaintiff had to call about the job months later and was informed that the position had been withdrawn.

31. Upon information and belief, Defendant, Department of Veterans Affairs underhandedly circumvented requirements to post job positions for nurse practitioners internally before beginning external recruitment by first hiring desired candidates within other departments in an effort to prevent Plaintiff from securing a position as a nurse practitioner.

32. Plaintiff suffered from constant disparate treatment due to her age from Defendant, Department of Veterans Affairs' employee Dr. Brown.

33. In addition to being denied promotions due to her age, Plaintiff was left out of Cardiology Department meetings by Dr. Brown, while other nurses, including ones with less experience and credentials, attended.

34. Plaintiff only found out what the department wanted her to do from fellow employees who would inform her of the discussions held in the meetings after they concluded.

35. Dr. Brown made it nearly impossible for Plaintiff to use the vacation days Plaintiff earned by taking months to respond to vacation requests and then denying them, even though Defendant, Department of Veterans Affairs' policy was that vacation day requests that were not responded to within 3 days would be automatically granted.

36. Dr. Brown would respond to many other emails from Plaintiff within minutes, while constantly delaying responses to vacation requests for weeks or months to functionally deny Plaintiff any of her earned time off.

37. Dr. Brown denied numerous time off requests by Plaintiff.

38. Dr. Brown denied Plaintiff's request to take unpaid time off to go for an extended visit to her birth country of Romania to visit aging relatives. This was

despite Dr. Ebright having previously granted a similar request for a trip that ultimately had to be postponed due to the passing of Plaintiff's mother.

39. Upon information and belief, other doctors and nurses working for Defendant, Department of Veterans Affairs were generally given approval and timely responses for their time off requests, including permission to take extended travel trips.

40. In January 2017, Plaintiff requested time off and funding for expenses to travel to a pharmacology conference in San Francisco that she was required to complete in order to meet the continuing education requirements for her nurse practitioner license.

41. Other similarly situated younger nurses, both registered nurses and nurse practitioners, were allowed time off for required conferences as well as access to an expense fund.

42. Instead of gaining the needed time off and funding as other nurses did, Plaintiff was informed by Dr. Brown that "you won't get any funds because you're not a nurse practitioner," even though she had been one for years and Defendant only refused to promote her due to her age.

43. Plaintiff responded that she was a nurse practitioner and that every year before Dr. Brown started working for Defendant, Department of Veterans Affairs she received time off for conferences.

44. Dr. Brown continued to deny the request and told Plaintiff that "you're not going to any conference." Dr. Brown then referred the matter to Chief of Staff/Chief of Medicine Dr. Scott Gruber, who also denied Plaintiff's request and sent her an email stating that "you will never prescribe for anyone at the VA."

45. Plaintiff sent an email to Dr. Brown informing her that denying her request for time off to attend the conference hours that she needed for both her registered nurse and nurse practitioner licenses was harassment, retaliation, and reprisal as she had requested and received time off to attend the required continuing education conferences for the previous 8 years.

46. Plaintiff was not granted permission to take time off to care for her aging and ill parents.

47. Plaintiff had, by a clerical error, been assigned to the medicine chain of command instead of the nursing chain of command when she was hired.

48. This made Plaintiff the only nurse functioning as a registered nurse who had to report to the medicine staff.

49. This caused material harm to Plaintiff due to not being evaluated by fellow nurses.

50. Plaintiff requested that this simple error be corrected, but this was denied because Defendant, Department of Veterans Affairs preferred to have her stuck in the incorrect chain of command due to her age.

9

51. Despite her role as a registered nurse and training as a nurse practitioner, Plaintiff was made to perform clerical duties for Defendant, Department of Veterans Affairs.

52. Dr. Aiden Abidov, who was hired by Dr. Brown to serve as the Section Chief of Cardiology, told Plaintiff that, "we are going to put a printer and a fax machine in your office and have you do clerical duties."

53. Dr. Abidov wanted Plaintiff to do these duties, even though she had not previously done clerical duties routinely and she was a nurse practitioner. Dr. Abidov continued to say, "if you don't want to do this, we will put a fax machine in your office so you won't even have to walk out of it."

54. Plaintiff asked Dr. Abidov if they actually needed someone with a masters degree to do this job and he responded, "no, we just need 2 hands and 2 feet."

55. Between January and April 2017, Plaintiff received interoffice envelopes that addressed her as the "Cardiology Secretary."

56. Upon information and belief, Dr. Brown or Dr. Abidov was responsible for addressing her as such on these packages because they had recently asked her to perform clerical duties.

57. This incident confirmed to Plaintiff that the attitude that Plaintiff was too old to be thought of as a nurse practitioner, which Dr. Ebright had first

expressed when he questioned her regarding who "asked" her to become a nurse practitioner, and was now being perpetuated by Dr. Brown and Dr. Abidov.

58. During the time period in question, Defendant, Department of Veterans Affairs was Plaintiff's employer and Plaintiff was its employee within the meaning of all state and federal laws. Moreover, Defendant, Department of Veterans Affairs is responsible for all acts committed by its agents, representatives and employees within the scope of their employment.

59. Defendants, through their agents, representatives and employees were predisposed to disparately treat Plaintiff on the basis of her age and acted in accordance with that predisposition.

60. Defendants' actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

61. In addition to filing complaints of age discrimination with Defendant, Plaintiff filed multiple claims with the EEOC for age discrimination and retaliation and exhausted her administrative remedies.

## COUNT I
## AGE DISCRIMINATION

62. Plaintiff incorporates by reference paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. Plaintiff is a 53 year-old woman who began her employment with Defendant, Department of Veterans Affairs in 2008.

11

64. Plaintiff was disparately treated due to her age by Defendant, Department of Veterans Affairs.

65. Plaintiff was denied reasonable time off requests and the ability to attend required continuing education conferences, consistently deprived of recognition as a nurse practitioner, frequently rejected for promotions to nurse practitioner jobs for which she was well-qualified, prevented from receiving reasonable schedule adjustments to facilitate her training as a nurse practitioner, and denied any opportunity for advancement within Defendant, Department of Veterans Affairs because of her age.

66. Pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, et seq. and the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 621, Plaintiff is guaranteed the right to be free from discrimination and/or termination from her employer and/or supervisors based upon her age.

67. Plaintiff's age was a factor in Defendants' employment decisions, including adverse employment actions, benefits, time off, and advancement.

68. The unjust and discriminatory treatment that Plaintiff suffered from Defendant, Department of Veterans Affairs based on her age caused anxiety and frustration and created a hostile work environment such that Plaintiff could no longer work for Defendant, Department of Veterans Affairs.

69. Defendant, Department of Veterans Affairs was Plaintiff's employer within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, et seq. and the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 621.

70. During the course of his employment with Defendant, Department of Veterans Affairs, Plaintiff was subjected to unwelcome age discrimination including adverse employment action based upon her age by Defendants creating a hostile work environment by Defendant, Department of Veterans Affairs' employees.

71. The age discrimination, hostile work environment, retaliation and adverse employment actions by Defendants and their employees, including had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

72. Defendants and their employees had both actual and constructive notice that they were creating an intimidating, hostile and offensive work environment for Plaintiff.

73. Despite having notice of the age discrimination and conduct toward Plaintiff, Defendants failed to take any remedial action.

74. The age discrimination and conduct by Defendants and Defendants' failure to take any remedial action violate the Michigan Elliott-Larsen Civil Rights

13

Act, MCLA 37.2201, et seq. and the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 621.

75. As a proximate result of the age discrimination and conduct by Defendants and Defendants' failure to take remedial action against the age discrimination, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

## COUNT II
## RETALIATION

76. Plaintiff incorporates by reference paragraphs 1 through 75 of the Complaint as though fully set forth herein.

77. Pursuant to the ADEA and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*, Plaintiff is guaranteed the right to be free from discrimination from her employer and/or supervisors based upon her engaging in

protected activities of complaining of age discrimination to her employer or the EEOC.

78. Defendant was Plaintiff's employer within the meaning of the ADEA and the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.

79. During the course of her employment with Defendant, Plaintiff was subjected to constant unwelcome age discrimination including being denied job promotions which created a hostile work environment by Defendant.

80. The racial discrimination created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

81. Plaintiff complained to upper management of Defendant that she was being discriminated against due to her age and that she was being subjected to a hostile work environment.

82. Instead of taking prompt remedial measures to stop the harassment and discrimination, Defendant retaliated against Plaintiff by treating here more harshly and refusing to approve vacation and personal leave time in retaliation for his complaints.

83. Plaintiff filed a claim and Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC") for age and retaliation.

84. Plaintiff was engaging in protected activities by complaining of age and race discrimination to upper management and the EEOC.

85. As a proximate result of the Defendant's retaliation of Plaintiff, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: July 30, 2020

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Maria Puscas, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

                Respectfully submitted,

                **BATEY LAW FIRM, PLLC**

    By: /s/Scott P. Batey
        SCOTT P. BATEY (P54711)
        Attorney for Plaintiff
        30200 Telegraph Road, Suite 400
        Bingham Farms, Michigan 48025
        (248) 540-6800
        sbatey@bateylaw.com

Dated: July 30, 2020